Larry Joe MILLER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17629.

United States Court of Appeals
Fifth Circuit.

Dec. 29, 1959.

Rehearing Denied Jan. 22, 1960.

Charles W. Tessmer, Dallas, Tex., for appellant.

Minor Morgan, Asst. U. S. Atty., Dallas, Tex., W. B. West, III, U. S. Atty., Fort Worth, Tex., for appellee.

Before RIVES, Chief Judge, and BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The principal issue in this appeal from a conviction for illegal possession and transportation of narcotics, 26 U.S.C.A. § 4744(a) (1) & (2), concerns the Government's privilege against disclosure of the identity of an informer who brought criminal information to the police.

Being tipped off by an informer, Dallas police officers and a federal narcotics agent located a quart Miracle Whip jar secreted in a leaf-covered hole several feet off a dirt road described as inter-

secting and dead-ending Celestial Road near a cemetery in an uninhabited area in northern Dallas. The jar contained approximately 1527 grains of marijuana, as laboratory tests subsequently confirmed. Detectives Beatty and Stroud and Special Agent Brown concealed themselves in the underbrush around the location and began the first lap of what was to be a 30-hour vigil. At 6:45 the following evening, the original officers—Beatty, Stroud and Brown, all of whom had been relieved but had returned for the climax—saw a 1955 white Cadillac on Celestial Road turn onto the dirt road and continue on it past the location of the jar down to the cemetery. It turned around and stopped near the spot where lay the jar still carefully concealed. Leaving the motor running, the driver got out and went directly to the leaf-covered hole and picked up the jar. Detective Beatty shouted "Police" and ordered him to halt. The driver bolted to the Cadillac and driver and car roared down the dirt road. Detective Stroud jumped in the path of the oncoming car waving his arms. As the Cadillac bore down, Stroud leaped back out of the road and it sped by him. Just before, the driver hurled the jar of marijuana through the open car window. The driver attempted a precarious 90° turn onto Celestial Road. Detective Stroud was back on the dirt road with a .12 gauge shotgun and blasted away four times at the tires of the Cadillac. The automobile swerved dangerously but somehow made the turn and sped away.

Later that evening, the Cadillac was found parked on a street in Dallas in front of the home of the adoptive parents of the 18-year-old accused, Larry Joe Miller. The car belonged to Larry Joe's mother. Several days later Larry Joe voluntarily surrendered to the police in another city after a newspaper article appeared stating that Larry Joe was being sought by the Dallas police. Detective Beatty and Agent Brown both testified that they had known Larry Joe previously and that he was the driver of the Cadillac. Detective Stroud testified that although he had not known Larry Joe previously he was able to identify Larry Joe as the driver.

### I.

On cross examination of Detective Beatty, counsel for Larry Joe elicited the fact that a confidential informer communicated in person to Detective Beatty. It was this information which enabled the police to find the hidden jar of marijuana. On the ground of the Government's privilege against disclosure of the identity of an informer, the District Judge refused a demand for the name of the informer. Appellant asserts this ruling is reversible error.

■ The Government's privilege in a criminal prosecution is subject to the important qualification that when evidence of the identity of the informer or contents of his communications "[may be] relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the court will require the disclosure, and if it is still withheld, will dismiss the prosecution.[1]

The standard for determining when the privilege must give way to the needs

1. Roviaro v. United States, 1957, 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645; Gilmore v. United States, 5 Cir., 1958, 256 F.2d 565; Portomene v. United States, 5 Cir., 1955, 221 F.2d 582. See McCormick, Evidence § 148 (1954).

"Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication. Scher v. United States, [305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151]; United States v. Li Fat Tong, 2 Cir., 152 F.2d 650; Wilson v. United States, [3 Cir., 59 F.2d 390]; United States v. Keown, D.C.Ky., 19 F. Supp. 639." Roviaro v. United States, supra. In those cases, "[t]he question is one of balancing the public interest in law enforcement against the policy of discouraging unreasonable searches and seizures." McCormick, Evidence § 148, note 11 at page 311 (1954).

of the accused is laid down in Roviaro v. United States.[2] "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

■ We think that the circumstances of this case differ crucially from those cases in which disclosure was required. We hold that it was not error to refuse to require the Government to divulge the identity of its source of information.

Here we are dealing with an individual who, knowing that someone has committed or is about to commit a crime, communicates that knowledge to the police who, acting independently, go to the scene and procure evidence of the crime. We are not dealing with one who was an active participant in the crime[3] nor with one whose presence gave the "atmosphere of confidence" during critical moments and who would have been able to testify directly about the very transaction[4] constituting the crime. But this is not to say that physical presence at the scene of the alleged crime is conclusive[5]. Neither is this a situation in which the informer is the person with whom the accused is charged to have been dealing, such as an indictment alleging a sale to anonymous with anonymous being the informer.[6] The Government presented its case without mention of the informer; the fact of the existence of an informer was brought out on cross examination. We think all the evidence discloses is

that the informer was an informer and nothing more.

There is some testimony that there was another person in the car with Larry Joe. In response to a statement in the Government's brief that there is no conduct in connection with the crime in which an informant could possibly have figured "unless it be contended that the person who accompanied the defendant in the automobile at the time he committed the offenses * * * was the informant," a Reply Brief for Appellant was filed which stated "it is well within the realm of probability that the second passenger * * * was the informer." But this is but a belated suggestion of a possibility as the record does not, as, for example, it did in Roviaro and Gilmore, supra, reveal any factual basis for the assertion that "it is well within the realm of probability." If the informer's relation to the acts leading directly to or constituting the crime may be assumed from a fertile imagination of counsel, the Government in practically every case would have to prove affirmatively that the informant had not done any such likely acts. Having done that, all would be revealed and the informer privilege, deemed essential for the public interest, for all practical purposes would be no more.

## II.

■ Objection is made to the instruction that failure to produce—upon reasonable notice and demand—the order form required by law (showing the payment of the special transfer tax) is presumptive evidence of guilt. 26 U.S.C.A. § 4744(a). The complaint is that appellant was "in jail and unwarned," and therefore the notice and demand were unreasonable. We cannot say that here under all the circumstances it was un-

**2.** 1957, 353 U.S. 53, at page 62, 77 S.Ct. 623, at page 628, 1 L.Ed.2d 639, at page 646.

**3.** See United States v. Conforti, 7 Cir., 1952, 200 F.2d 365. Sorrentino v. United States, 9 Cir., 1947, 163 F.2d 627.

**4.** Gilmore v. United States, 5 Cir., 1958, 256 F.2d 565.

**5.** See note 1, supra.

**6.** See Portomene v. United States, 5 Cir., 1955, 221 F.2d 582; Sorrentino v. United States, 9 Cir., 163 F.2d 627. Cf. Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639.

reasonable as a matter of law. See Gondron v. United States, 5 Cir., 1958, 256 F.2d 205. Thus, reasonableness was an inquiry properly submitted to the jury.

### III.

 Citing Rent v. United States, 5 Cir., 1954, 209 F.2d 893, appellant argues that as a matter of law the evidence was insufficient to support a conviction for unlawful possession and unlawful transportation of narcotics since the evidence at most established a mere "fleeting possession." But the Rent case does not stand for the proposition that possession for a short time is not sufficient to support a conviction. A short quotation from Rent demonstrates that.

"[The accused's] possession of the one cigarette was a mere fleeting possession, not inconsistent with honest intention or mere curiosity, and his throwing the cigarette away upon being ordered to stop is not, in our opinion, substantial evidence of a guilty knowledge or intent. * * * There was no substantial evidence * * * of criminal intent." Rent v. United States, 5 Cir., 1954, 209 F.2d 893, 900.

Manifestly the basis for Rent was the complete lack of evidence of criminal intent. To say that under the facts of this case the possession, more accurately described as *fleeing* rather than *fleeting*, is "not inconsistent with honest intention or mere curiosity" is for words to "be used as playthings." Romero v. International Term. Operat. Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368, 386.

### IV.

 This leaves the objection that there could be no offense committed since the transfer of narcotics came from law enforcement officers who are exempt from paying the transfer tax. 26 U.S.C.A. § 4744(a). But on the inferences which the jury could rightfully draw, the officers had nothing to transfer. Knowledge that the jar of marijuana was in the hole in the ground, or the taking of a small sample for laboratory verification did not make this such a possession by the officers as to constitute them transferors. A defense of entrapment would be an altogether different matter and would not be based on the non-liability of the transferor to pay the special tax.

Appellant urges additional errors including several objections to the instructions given to the jury. We find no merit in any of these complaints.

Affirmed.