**UNITED STATES of America,**
**Appellee,**

v.

**Frank D'ANGIOLILLO, a/k/a Frank**
**Buick and Louis D'Angiolillo,**
**Appellants.**

**No. 130, Docket 28849.**

United States Court of Appeals
Second Circuit.

Argued Oct. 9, 1964.

Decided Jan. 15, 1965.

Certiorari Denied March 29, 1965.
See 85 S.Ct. 1090.

454

Martin R. Gold, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., S. D. New York, and Neal J. Hurwitz, Asst. U. S. Atty., New York City, on the brief), for appellee.

Jonathan L. Rosner, New York City (Ralph L. Pliskin, Flushing, on the brief), for appellants.

Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge.

Frank and Louis D'Angiolillo appeal from convictions and sentences of seven and five years respectively in the District Court for the Southern District of New York for violating the federal narcotics laws, 21 U.S.C. §§ 173, 174, and conspiring to violate such laws.[1] The defendants seek reversal principally on the grounds that the trial court erred in not either directing the government to call its informer as a witness or calling him as a witness of the court and that certain unlawful searches made at the time the defendants were arrested required dismissal of the indictment. We affirm the convictions.

The government's principal witness was Detective Robbie Williams of the

1. The seven and five-year sentences were imposed for each of three substantive counts and one conspiracy count, the sentences to run concurrently. The three substantive counts were based on nar- cotics sales on December 9, 1962 and January 23, 1963 and on Louis' actual possession and Frank's constructive possession of narcotics on the day of their arrest, March 20, 1963.

New York City Police Narcotics Bureau. According to her account, her first contact with the defendants was on December 9, 1962, when Frank D'Angiolillo twice called the home of Claude Norman Greene, a police informer. Detective Williams answered each time, and when Greene took the telephone he held the receiver so that she could hear them arrange a meeting. At the meeting, near 176th Street and Grand Concourse in the Bronx, Greene and Detective Williams received from Louis D'Angiolillo a package which contained approximately 100 grams of heroin.

There were other telephone calls from Frank and meetings with Louis during the following months, but on only one occasion did Detective Williams meet Frank. She and Greene met him on January 22, 1963 at his clothing store near 117th Street and Pleasant Avenue. He told them that he could not arrange a sale at that time because he was moving into a dry cleaning establishment across the street; when Detective Williams told him that she wanted "four piece," he said that he would call Greene's home at 7:30 the next morning.

Detective Williams testified that she did receive a call at Greene's home at 7:30 the following morning and that she recognized Frank's voice. They arranged a meeting to which she went alone.[2] As before, she received from Louis a package containing approximately 100 grams of heroin.

The defendants were arrested on March 20, 1963. Louis was arrested in his taxicab, which he had used to deliver heroin to Detective Williams. The arresting officers seized the taxicab trip ticket and a package containing some 400 grams of heroin. Frank was arrested in front of his dry cleaning shop. No narcotics were found in searching his two stores, or in searching the homes of the defendants and of members of their families.

Motions to suppress the evidence seized in searching the stores and homes were made prior to trial. A hearing was held before Judge Cannella, who ruled that the searches of the residences were unlawful but reserved decision as to the search of Frank's clothing store. He ruled at trial that the latter search also was unlawful. None of the evidence taken in these searches was received in evidence.

At trial, Frank did not testify, but Louis testified in his own behalf. Greene was not called as a witness by either side.

■ The defendants first argue that the court should have directed the government to call Greene as a witness or itself have called him. We have considered this problem in a number of cases, e. g., United States v. White, 2 Cir., 324 F.2d 814, 816 (1963); United States v. Cimino, 321 F.2d 509, 512 (1963), cert. denied, D'Ercole v. United States, 375 U.S. 967, 974, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); United States v. Holiday, 2 Cir., 319 F.2d 775 (1963). The rule emerging from these and earlier decisions is that, where the informer's testimony may be relevant to the defense, the defendant is entitled to his name, to such information as the government may have concerning his whereabouts,[3] and to reasonable cooperation in securing his appearance. However, the government is not required to call an informer or "special employee" as its witness.

■ Greene was readily available, being confined in the New York City Penitentiary Prison, and Judge Cannella offered to have him served with a subpoena. He also offered to permit defendants to interrogate Greene privately be-

2. As noted later in this opinion, Detective Williams testified before the grand jury that she went to this meeting with Greene.

3. See our opinion in United States v. Comulada, 2 Cir., 340 F.2d 449, filed to-

day. Of course, where the informer or his family might be endangered by public disclosure, the trial court in its discretion may direct that the information be revealed only to counsel, as was done in this case.

fore deciding whether to call him as a witness and told them that they could question him as a hostile witness if such he proved to be. The defendants chose not to call him but instead advised the court to do so after the government rested its case without calling Greene. There is no basis whatever for their claim that there was error in the government's failure and the court's refusal to call Greene.

The defendants cite no case holding that the court is required to direct the government to call the informer or to call him as a witness of the court,[4] and, at least on the facts of this case, we see no reason for imposing such a duty. Accepting Detective Williams' testimony at trial, which the jury must have believed, Greene's role was limited to introducing her to the defendants and accompanying her to the first meeting with Louis. His testimony, though relevant, presumably would have been only cumulative.

■ The defendants' second claim of error is that certain unlawful searches required dismissal of the indictment even though nothing taken in the searches was received in evidence. Frank's home in Paramus, New Jersey, and Louis' home on Staten Island were searched at approximately the time that the arrests were made; searches of the homes of the defendants' parents and Frank's wife and of an apartment used by Frank were made later in the day. The searches appear to have been conducted principally by federal agents, but New York City police officers participated at least in the searches of Frank's store and Louis' home. Although the searches reflect considerable planning, no search warrant was obtained, and their illegality must have been apparent to anyone possessing the slightest familiarity with constitutional limitations on police activity.

Since the searches were made nearly two years after the Supreme Court's decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1681 (1961), it is difficult to see what legitimate end the officers thought might be furthered. Whether those responsible were incompetent or incredibly careless or were actually indifferent to the constitutional guarantees is of relatively little importance; whatever the reason, the result was the flagrant violation of the rights of not only the defendants but of several persons not accused of any crime. Those whose duty it is to enforce the law must obey the law themselves. Violations such as those in this case are at best shortsighted. Their immediate effect may be to jeopardize investigations and prosecutions which otherwise might be fruitful. The ultimate, and more serious, effect is a loss of public respect for the law and law enforcement agencies.

■ We do not believe, however, that dismissal of the indictments would be an appropriate sanction. The convictions were obtained solely on the basis of lawfully acquired evidence. The law calls only for exclusion, and we do not think that the public interest would be served by requiring more than this in the exercise of our supervisory power over the administration of criminal justice. Instead, we direct the United States Attorney to send copies of such parts of the record as are relevant to the searches to the Secretary of the Treasury and to the Police Commissioner of the City of New York so that appropriate action may be taken by those who are ultimately responsible for the conduct of the officers concerned. We also direct the United States Attorney to advise us of what action, if any, is taken by the Secretary and the Commissioner.

■ The defendants also raise numerous objections to the court's evidentiary

4. The defendants' citation of the concurring opinion of Chief Justice Warren in Lopez v. United States, 373 U.S. 427, 441, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), gives no support to their argument. The Chief Justice was concerned with a different problem—the use of incriminating recordings obtained by an informer without calling the informer himself as a witness.

rulings and instructions. We find no error in Judge Cannella's evidentiary rulings. He refused to allow disclosure to the jury of Greene's address, but he did offer to make it available to the defendants' counsel. Judge Cannella believed that Greene's family, who still lived at his home, would be endangered by public disclosure of the address. We think that this resolution of the conflicting interests of disclosure and protection of the informer's family lay well within the trial judge's discretion.

 The jury was instructed that Greene was available to both parties and that they could not draw an inference against either party from the fact that he was not called as a witness. This instruction was proper.[5]

██ We also find no error in the court's instruction with respect to the proof necessary for conviction under §§ 173 and 174. Judge Cannella correctly charged as to the presumption under § 174 of illegal importation and of the defendant's knowledge thereof. In addition, he explained that "possession" as used in these sections includes effective control of the narcotics as well as actual possession, and he repeatedly stressed the element of knowledge required for guilt.

 Finally, defendants contend that they should have been given the minutes of Detective Williams' testimony before the grand jury. Grand jury minutes need be made available to the defense only if the trial court finds inconsistencies between the testimony of a witness at trial and before the grand jury. United States v. Giampa, 290 F.2d 83 (2 Cir. 1961). Judge Cannella initially found no inconsistency, but the government subsequently pointed out an inconsistency in the testimony of Detective Williams: She had told the grand jury

that she went with Greene to the second meeting with Louis D'Angiolillo, but she testified at trial that she went alone. This portion of the minutes was made available to the defendants, and they were given an opportunity to recall Detective Williams for further cross-examination. Since, upon reading the minutes, we find no additional inconsistencies, we find that the rights of the defendants were fully protected.

We have examined the other claims of error made by the defendants and find them to be without merit.

---

5. It would generally be enough to say that the jury, having before it the facts with regard to the availability of the witness and his relation to the parties, may draw such inferences as they choose. United States v. Comulada, 340 F.2d 449 (2 Cir. 1965), decided today; United States

v. Cotter, 60 F.2d 689, 692 (2 Cir. 1932) (L. Hand, J.). The charge in the instant case, however, is proper where it is clear that the witness is readily available to both sides. 2 Wigmore, Evidence § 288 (3d ed. 1940).