**UNITED STATES of America, Appellant**

v.

**James T. SKEENS.**

**No. 23599.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 27, 1971.

Decided June 14, 1971.

Mr. Broughton M. Earnest, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Charles R. Work, Asst. U. S. Attys., were on the brief, for appellant.

Mr. Allan M. Palmer, Washington, D. C. (appointed by this Court), for appellee.

Before BAZELON, Chief Judge, TAMM, Circuit Judge, and GIGNOUX,* United States District Judge for the District of Maine.

GIGNOUX, District Judge:

This appeal presents the single question of whether the trial judge erred in setting aside a jury verdict of guilty and dismissing an indictment because of the refusal of the government to disclose the identity of an informant. For the reasons to be stated, we hold that, under the circumstances of this case, this was error.

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

I.

Appellee was indicted on August 10, 1967, along with a co-defendant, Francis Reichert, on one count of robbery (D.C. Code § 22–2901 (1967)) and two counts of assault with a dangerous weapon (D.C.Code § 22–502 (1967)). The charges arose out of the armed robbery of an employee of Duke Zeibert's Restaurant on May 15, 1967, in which two robbers netted approximately $14,000 in cash and checks which was being carried to a nearby bank for deposit.

After Reichert's case was severed, appellee came to trial on February 17, 1969. The government presented two witnesses. The first was the victim of the robbery, Nathaniel Swindler, who testified that at about 10:30 a. m. on May 15, 1967, he was robbed by two men in an alley behind Duke Zeibert's Restaurant. Swindler made an in-court identification of appellee as one of the two robbers, and stated that appellee was carrying a pistol and the other man was carrying a sawed-off shotgun. The government's second witness was the office manager at the restaurant, who confirmed that Swindler had about $14,000 in cash and checks to be delivered to the bank at the time he was robbed.

At the conclusion of the government's case, appellee's counsel requested and obtained a *Brady* [1] hearing, out of the presence of the jury, to determine what evidence favorable to the defense the police might have. At this hearing, Sergeant Louis Blancato of the Metropolitan Police, one of the investigating officers, revealed that approximately three weeks after appellee's arrest, he had been contacted by a "very reliable" informant, who had given him the following information:

1. Appellee and one John Scott had hired a man named Red Pope, a parolee, to kill the government's witness, Swindler.

1. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. The shotgun used in the robbery had been stolen from a house in Prince George's County, Maryland.

3. Reichert was the man who had carried the shotgun during the robbery.

4. The shotgun was then at 1030 13th Street, N.W., where Reichert's girl friend, Kay Travett McCurry, lived.

5. The house on 13th Street was actually the residence of one John Travett, with whom Reichert's girl friend was then living.

Blancato further testified that upon receiving the foregoing information, he and other police officers went to the house on 13th Street, talked to the girl friend, and searched the premises for the shotgun. Although the police did not find the shotgun, they did seize a shotgun shell. The officers then located and arrested Red Pope, who admitted knowing appellee, Reichert and John Scott, but did not admit being hired to kill Swindler.[2] Two days after the arrest of Red Pope, Blancato received a second call from the informant, who stated that another person named Lewis had been hired to kill Swindler.

Upon learning of the existence of the informant, appellee's counsel asked for his name, but Blancato refused to disclose it on the ground that the informant might be killed. After hearing argument, the trial judge indicated that the defense had a right to cross-examine the informant. A luncheon recess followed, during which Blancato telephoned the informant, who stated that he feared for his life and refused even to meet with the judge *in camera*.[3] The trial court then indicated that unless the government disclosed the informant's identity, it would dismiss the indictment. The court reserved its decision until the following day in order to permit the government to determine its course of action.

On the following day, February 20, the government asked for a stay in order to seek a writ of mandamus or prohibition in this Court to preclude the trial court from dismissing the case. At the request of appellee's counsel, however, the trial court permitted the trial to proceed with the understanding that if the government's petition for mandamus were denied, the indictment would be dismissed. The defense called three witnesses in an attempt to establish an alibi defense. A parole officer testified that appellee was at 300 Indiana Avenue, N. W. (across from the United States Courthouse), at 11 a. m. on the day of the robbery. Appellee's former defense attorney testified that appellee and his wife were in his office at 601 Indiana Avenue, N.W. (around the corner from the United States Courthouse), between 11:10 and 11:20 a. m. on the day of the robbery. And another attorney testified that he saw appellee's wife in the United States Courthouse at about 10:35 a. m. that morning. The defense then rested, and the government introduced in rebuttal a stipulation that the driving time at 10:30 a. m. between the scene of the crime and 300 Indiana Avenue was about nine to ten minutes. After final arguments by the prosecution and the defense, this Court on February 24 acted upon the government's petition for mandamus and ordered the case submitted to the jury, without prejudice to any post-trial motions. On February 25 the trial court instructed the jury and on February 26 the jury returned a verdict of guilty on the robbery count and one count of assault with a dangerous weap-

2. Pope was held as a parole violator, but was not charged with the conspiracy to kill because the police were unwilling to disclose their informant and had no other evidence to support the charge.

3. Following the luncheon recess, Blancato disclosed the additional information, supplied by the informant, that the shotgun used in the robbery had been stolen by Reichert from John Scott's Coffee Shop on Birch Avenue and that it had originally been stolen from a home in the Cheverly area of Maryland in 1966.

on, acquitting appellee on the remaining count.

Immediately following the return of the jury's verdict, appellee sought a judgment n. o. v. on the ground that the informant had not been identified. This motion was assigned for argument on February 28, but on February 28 the government filed in this Court a supplemental petition for a writ of mandamus or prohibition, and this Court ordered a stay of all proceedings then pending in the lower court. Despite this Court's stay, the trial court on February 28 set aside the verdict and *sua sponte* ordered a new trial, directing the government to produce the informant. On June 27 this Court, acting upon the government's February 28 supplemental petition for mandamus, held that the trial judge's action in setting aside the verdict and ordering a new trial was a nullity. On the merits of the government's petition, this Court held that the case did not warrant the issuance of the writ, and therefore the trial judge should proceed to dispose of appellee's post-verdict motion on its merits. United States v. Green, 134 U.S.App.D.C. 278, 414 F.2d 1174 (1969). After hearing further argument, the trial court on August 7, 1969, entered an order setting aside the jury verdict and dismissing the indictment because of the failure of the government to produce its informant. It is from this order that the government now appeals. 18 U.S.C. § 3731 (1964); D.C.Code § 23–105(a) (Supp. III 1970).

## II.

Appellee contends that he was entitled to the name of the government's informant under the rule announced by the Supreme Court in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Roviaro had been tried and convicted upon a two-count indictment charging the sale and transportation of narcotics. The informer had been an active participant in the crime. He "had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged." 353 U.S. at 55, 77 S.Ct. at 625. The court required disclosure of the informant, pointing out that he "was the sole participant, other than the accused, in the transaction charged." 353 U.S. at 64, 77 S.Ct. at 630. The Court held that where, in the trial of a federal criminal case,

> the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.
>
> *   *   *   *   *   *
>
> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. *Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.* 353 U.S. at 60–61, 62, 77 S.Ct. at 628–629. (Footnotes omitted.) (Emphasis supplied.)

It is true that in *Roviaro* the Court required disclosure of the informant's identity. In the particular circumstances presented by that case, where the informant was an active participant in the crime of which Roviaro was accused, the Court concluded that the public interest in protecting the flow of information must yield to the right of the accused to prepare his defense. The Court refrained, however, from imposing any absolute rule requiring disclosure in all cases. Indeed, when the Supreme Court next considered the disclosure problem in Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964),

it distinguished *Roviaro* by pointing out that in *Rugendorf* there was no intimation that the informant "had played a direct and prominent part, as the sole participant with the accused, in the very offense for which the latter was convicted." 376 U.S. at 534, 84 S.Ct. at 829. In affirming Rugendorf's conviction despite nondisclosure of the informant's identity the Court again declared that "the necessity for disclosure depends upon 'the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" 376 U.S. at 534–535, 84 S.Ct. at 829. And in its most recent pronouncement on this question, McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the Court reaffirmed that *Roviaro* did not "impose any absolute rule requiring disclosure of an informer's identity." 386 U.S. at 311, 87 S.Ct. at 1062:

Appellee seeks to bring the facts of his case within *Roviaro*. But there is no evidence in this record that the government's informant had done anything other than merely supply information. The record shows only that the informant contacted the police, some three weeks after the crime, and told them of the source and whereabouts of the shotgun involved in the robbery and an alleged conspiracy to murder the government's principal witness. The record is otherwise silent as to participation by the informant in the offense itself. The government presented its case without mention of the informant, and his information was not used at trial. We are thus not, as in *Roviaro*, dealing with one with whom the accused was charged to have been dealing in the commission of the offense. Unlike *Roviaro*, nothing in this record establishes that the informant was a participant, an eyewitness, or a person who was otherwise in a position to give direct testimony concerning the

crime. None of the criteria of *Roviaro* are present. *See* Rugendorf v. United States, *supra,* 376 U.S. at 535, 84 S.Ct. 825. In sum, all the evidence discloses is that "the informer was an informer and nothing more." Miller v. United States, 273 F.2d 279, 281 (5th Cir. 1959), cert. denied, 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960).

Appellee argues that given the intimate knowledge the informant seemed to have of the operation, it is likely that he knows a great deal more than has been revealed. He intimates that the informant may have been the driver of a "getaway car." He contends that because of the existence of an alibi defense, because of what he characterizes as a "paper-thin" government case based upon a "poor" identification, and because of the alleged bias of the investigating officers,[4] he should have been permitted to question the informant in order "to get to the core of the matter." Such speculation, however, is not sufficient to meet the heavy burden which rests on an accused to establish that the identity of an informant is necessary to his defense. *See* Rugendorf v. United States, *supra,* 376 U.S. at 535, 84 S.Ct. 825. As the Court observed in Lannom v. United States, 381 F.2d 858 (9th Cir. 1967), cert. denied, 389 U.S. 1041, 88 S.Ct. 784, 19 L.Ed.2d 833 (1968), "[m]ere speculation that the informer might possibly be of some assistance is not sufficient to overcome the public interest in the protection of the informer." 381 F.2d at 861. Appellee's position is similar to that rejected by the court in Miller v. United States, *supra,* where the court said:

If the informer's relation to the acts leading directly to or constituting the crime may be assumed from a fertile imagination of counsel, the Government in practically every case would have to prove affirmatively that the informant had not done any such likely acts. Having done that, all would be

---

4. Appellee claims that two of the investigating officers were prejudiced because appellee had been a key witness in a prior prosecution resulting in the conviction of one officer's brother and a close friend of the other.

revealed and the informer privilege, deemed essential for the public interest, for all practical purposes would be no more. 273 F.2d at 281.

■ We add only one further comment. The Supreme Court has made clear that the exception to the informer privilege recognized by *Roviaro* requires that, in each case, the court balance the right of the defendant to a fundamentally fair trial by obtaining any evidence that may be helpful to his defense, on the one hand, and the need of society "to protect the flow of information to the Government" by keeping secret the identity of its informers, on the other. Westinghouse Elec. Corp. v. City of Burlington, 122 U.S.App.D.C. 65, 351 F.2d 762, 768 (1965); United States v. Russ, 362 F.2d 843, 845 (2d Cir.), cert. denied, 385 U.S. 923, 87 S.Ct. 236, 17 L.Ed.2d 146 (1966). In striking this balance as we do today, we find ourselves in accord with every other federal appellate court, including a panel of this Court in Anderson v. United States, 106 U.S.App.D.C. 340, 273 F.2d 75, cert. denied, 361 U.S. 844, 80 S.Ct. 95, 4 L.Ed.2d 81 (1959), which has had occasion to consider the disclosure problem since *Roviaro*. The lower federal courts have consistently held that *Roviaro* does not require disclosure of an informant who was not an actual participant in or a witness to the offense charged. *See e. g.*, Rocha v. United States, 401 F.2d 529 (5th Cir. 1968), cert. denied, 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 796 (1969); Jimenez v. United States, 397 F.2d 271 (5th Cir. 1968); Churder v. United States, 387 F.2d 825, 831–832 (8th Cir. 1968); Lannom v. United States, *supra*, 381 F.2d 861–862; Rodriguez-Gonzalez v. United States, 378 F.2d 256, 258–259 (9th Cir. 1967); Garcia v. United States, 373 F.2d 806, 808 (10th Cir. 1967); United States v. Pitt, 382 F.2d 322, 325 (4th Cir. 1967); Zaroogian v. United States, 367 F.2d 959, 962 (1st Cir. 1966); United States v. Russ, *supra*, 362 F.2d at 844–846; Garibay-Garcia v. United States, 362 F.2d 509, 510 (9th Cir. 1966); Cook v. United States, 354 F.2d 529, 531 (9th Cir. 1965); Marderosian v. United States, 337 F.2d 759, 760–761 (1st Cir.), cert. denied, 380 U.S. 971, 85 S.Ct. 1328, 14 L.Ed.2d 268 (1964); United States v. Konigsberg, 336 F.2d 844, 848 (3d Cir.), cert. denied, 379 U.S. 933, 85 S.Ct. 334, 13 L.Ed.2d 344 (1964); Bruner v. United States, 293 F.2d 621 (5th Cir.), cert. denied, 368 U.S. 947, 82 S.Ct. 388, 7 L.Ed.2d 343 (1961); Miller v. United States, 273 F.2d *supra* at 280–281; Pegram v. United States, 267 F.2d 781 (6th Cir. 1959). Conversely, disclosure has been required where the informant was an active participant or was present at the scene of the crime. *See, e. g.*, Lopez-Hernandez v. United States, 394 F.2d 820 (9th Cir. 1968); United States v. Roberts, 388 F.2d 646, 648–649 (2d Cir. 1968); Gilmore v. United States, 256 F.2d 565, 566–567 (5th Cir. 1958).

The order of the District Court is reversed and the case is remanded to the District Court for proceedings not inconsistent with this opinion.

Reversed and remanded.

BAZELON, Chief Judge (dissenting):

In the particular circumstances of this case I cannot agree that the trial judge abused her discretion, *e. g.*, United States v. Harrison, 139 U.S.App.D.C. 266, 267, 432 F.2d 1328, 1329 (1970); Garibay-Garcia v. United States, 362 F.2d 509, 510 (9th Cir. 1966), in ordering disclosure of the informer's identity.

The only helpful Supreme Court case on the question is Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1957). There the Court said (at 62, 77 S.Ct. at 628)

> that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime

charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. The crime charged here was armed robbery. The defense was alibi and mistaken identity. Thus if the informer had information as to who participated in the robbery, there is no doubt that it would be highly relevant, and the informer's identity would have to be disclosed. Roviaro v. United States, *supra*; United States v. Barnett, 418 F.2d 309, 311–312 (6th Cir. 1969); United States v. Roberts, 388 F.2d 646, 649 (2d Cir. 1968).

The difficulty in this case arises from the fact that the record does not show with clarity whether or not the informer (as a participant or witness or otherwise) had information as to who participated in the robbery. The question then becomes, how certain must the court be that the informer has relevant testimony before the government must reveal his identity. An unadorned assertion of need by the defense, *e. g.*, Anderson v. United States, 106 U.S.App.D.C. 340, 273 F.2d 75, cert. denied, 361 U.S. 844, 80 S.Ct. 95, 4 L.Ed.2d 81 (1959), or a speculative possibility which comes "from [the] fertile imagination of counsel," Miller v. United States, 273 F.2d 279, 281 (5th Cir. 1959), cert. denied 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960), is plainly not enough. But today the court has gone to the other extreme. It imposes on the defendant a "heavy burden * * * to establish that the identity of an informant is necessary to his defense." *Roviaro*, of course, imposed no such burden. Indeed, the Supreme Court in that case spoke of "the *possible* significance of the informer's testimony" (353 U.S. at 62, 77 S.Ct. at 629; emphasis added), and noted that the "testimony *might*

have disclosed an entrapment," or "*might* have thrown doubt upon petitioner's identity" (353 U.S. at 64, 77 S.Ct. at 629; emphasis added).[1]

The proper standard, in my view, is the one suggested in the Proposed Rules of Evidence, drafted by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States. Rule 510(c) (2), reprinted in 51 F.R.D. 378, reads:

If an election is made not to disclose the identity of an informer and the circumstances indicate a reasonable probability that the informer can give testimony . . . necessary to a fair determination of a material issue in the case, the judge shall * * * dismiss the proceedings * * *.

*See also* Price v. Superior Court, 1 Cal. 3d 836, 83 Cal.Rptr. 369, 463 P.2d 721 (1970).

This test, like *Roviaro* itself, does not place the burden of persuasion on either party. Instead, it instructs the court to examine the circumstances of the case to decide how likely it is that the informer has relevant testimony. It leaves room for recognizing that the defendant is the party least able to carry a heavy burden of establishing *anything* about the informer. Only the government has access to the informer. The defendant must depend on the government's employees—often, as here, the very police officer who investigated the crime—to find out what information the informer has. The court does not suggest otherwise. Thus placing a heavy burden on the defendant emasculates the Supreme Court's holding that "[w]here the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way," Roviaro v. United States, *su-*

---

1. The court's reliance on Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) is misplaced. There the defendant at trial had sought the informer's name only with respect to probable cause, *cf.* McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), and consequently had not prepared a record on which the Supreme Court could pass on the question whether the informer's name was needed for a fair trial. 376 U.S. at 534–535, 84 S.Ct. 825.

*pra* 353 U.S. at 60–61, 77 S.Ct. at 628 (footnote omitted).

Under my view of the test to be applied, the trial judge properly ordered disclosure. The record reveals "a reasonable probability that the informer can give testimony necessary to a fair determination" of guilt or innocence. The informer knew a considerable amount about the crime: in particular he knew where the shotgun used in the robbery had come from, where the shotgun was then located, and most significantly, that one Francis Reichert, who had been indicted along with appellant, had held the shotgun during the robbery. The extent of his knowledge, combined with the improbability that he simply overheard a conversation about so serious a crime, indicate that he may well have been a participant or some sort of insider. This conclusion is buttressed by the fact that the informer reported that appellant and another hired someone to kill the main government witness. The government introduced nothing of its own to negate this conclusion, and steadfastly refused to produce the informer for *in camera* interrogation by the judge, at the courthouse or elsewhere.

Moreover, there are "other relevant factors" present here which the trial judge could properly consider under *Roviaro* in assessing the likelihood that the informer had relevant testimony to offer. Appellee made an impressive showing that the police officer who provided all the information we have about the informer had a strong reason to be prejudiced against the appellee.[2] Also, the trial judge saw and heard the officer on the stand, and she explicitly noted in her order that the officer injected "prejudicial testimony into the case" which justified setting aside the jury verdict. In these extraordinary circumstances, we cannot indulge the presumption that the government has revealed everything that the informer knew. Thus the need to secure the informant's own testimony became uniquely important. *Cf.* People v. Clifton, 42 Ill.2d 526, 250 N.E.2d 649 (1969). Accordingly, I would affirm the trial court's order.[3]

---

2. The appellant had been the informer who helped convict the officer's friend, a former policeman in whose behalf the officer had testified.

3. Since it seems clear that we have jurisdiction under 23 D.C.Code § 105(a) (Supp. III, 1970), as amended, 23 D.C. Code § 23–104(c) (Supp. IV, 1971), *see* Carroll v. United States, 354 U.S. 394, 408–415, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957); Mann v. United States, 113 U.S.App.D.C. 27, 28 n. 1, 304 F.2d 394, 395 n. 1, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962), I express no opinion on whether we have jurisdiction under 18 U.S.C. § 3731 (Supp. V, 1970). *See* Will v. United States, 389 U.S. 90, 97 n. 5, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) (dicta); United States v. Apex Distrib. Co., 270 F.2d 747 (9th Cir. 1959). Section 3731 has recently been amended, but the amendment has no effect on this case. *See* Omnibus Crime Control Act of 1970 § 14, 84 Stat. 1890.