**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES OF AMERICA** |
| v. |
| **AHMED SALIM FARAJ ABU KHATALLAH,** |
| also known as "Ahmed Abu Khatallah," also known as "Ahmed Mukatallah," also known as "Ahmed Bukatallah," also known as "Sheik," |
| Defendant. |

Case No. 14-cr-00141 (CRC)

## MEMORANDUM OPINION AND ORDER

Defendant Ahmed Salim Faraj Abu Khatallah has moved to compel disclosure of the name of the original source of Libyana telephone records that have been admitted as Government's Exhibit 1100(A). The name of the records' original source remains classified. In a Memorandum Opinion and Order filed September 21, 2017 with the Classified Information Security Officer ("CISO") (ECF No. 354), the Court—based on testimony about the records' origin and a certification from Libyana's CEO attesting that the records were genuine—held these records admissible as business records under Federal Rule of Evidence 803(6).

The Government opposes the Defendant's motion, and the Court construes its opposition as a motion pursuant to the Classified Information Procedures Act ("CIPA") for a protective order to prevent disclosure of the source's name. See 18 U.S.C. app. 3 § 3. The Court held a classified hearing on November 3, 2017 and the Government has submitted an *ex parte* declaration explaining the national-security risks that disclosure would entail. For the reasons that follow, the Court will not require disclosure of the source's identity.

CIPA is a procedural framework for the discovery and admission of classified information. It did not alter the substantive law of discovery, but rather presupposes certain common law privileges that protect classified or otherwise sensitive information. See United States v. Yunis, 867 F.2d 617, 621 (D.C. Cir. 1989); Sen Rep. No. 93-823, at 8. In seeking to avoid disclosure of the source's identity, the Government invokes one such privilege: the "informant's privilege" recognized in Roviaro v. United States, 353 U.S. 53 (1957).

The informant's privilege allows the government "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Id. at 59. The privilege, however, "is by no means absolute." United States v. Brodie, 871 F.2d 125, 128 (D.C. Cir. 1989). Its application "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense," the latter of which "depend[s] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 60. In short, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of the cause, the privilege must give way." Id. at 60–61.

Under that standard, the Supreme Court in Roviaro required the government to disclose the identity of its informant, who "was an active participant in the crime of which Roviaro was accused." United States v. Skeens, 449 F.2d 1066, 1069 (D.C. Cir. 1971). But cases after Roviaro have read its mandate of disclosure as a fact-specific exception to the general rule of *nondisclosure*. Specifically, the D.C. Circuit has explained that "[d]efendants seeking disclosure of an informant's identity bear a 'heavy burden' in establishing that disclosure is warranted."

2

United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir. 1996) (quoting Skeens, 449 F.2d at 1071)).

In Skeens, for example, the defendant had sought disclosure of the identity of an informant who "contacted the police, some three weeks after the crime, and told them of the source and whereabouts of the shotgun involved in the robbery and an alleged conspiracy to murder the government's principal witness." 449 F.2d at 1070. The defendant proffered reasons to believe that the informant's identity could assist his defense: he asserted that, based on the informant's "intimate knowledge" of the robbery, "he kn[ew] a great deal more than ha[d] been revealed," and "that the informant may have been the driver of a 'getaway car.'" Id. But the court, distinguishing Roviaro, upheld nondisclosure of the informant's identity. "Unlike Roviaro," the court explained, "nothing in this record establishes that the informant was a participant, an eyewitness, or a person who was otherwise in a position to give direct testimony concerning the crime. None of the criteria of Roviaro are present. . . . '[T]he informer was an informer and nothing more.'" Id. (quoting Miller v. United States, 273 F.2d 279, 281 (5th Cir. 1959)). And the court dismissed arguments about the informant's ability to provide exculpatory information as "speculation" that was "not sufficient to meet the heavy burden which rests on an accused." Id.

Skeens purported to create a rule protecting an informant's identity unless he were "an actual participant in or a witness to the offense charged." Id. at 1071; see also United States v. Gaston, 357 F.3d 77, 84 (D.C. Cir. 2004) ("[W]e have required, as a prerequisite to disclosure, that the informant have had some sort of direct connection, either as a participant or an eyewitness, to the crime charged."); Mangum, 100 F.3d at 172 ("In order 'to overcome the public interest in the protection of the informer,' the defendant is obligated to show that the

3

informer was 'an actual participant in or a witness to the offense charged,' whose identity is 'necessary to [the] defense.'").  Under this bright-line approach, the identity of the telephone records' source—as someone who did not participate or witness the September 2012 attacks in Benghazi—would undoubtedly be protected from disclosure.  He "was an informer and nothing more."  Skeens, 449 F.2d at 1070.

But even assuming Roviaro's rule is not so categorical, the D.C. Circuit unequivocally requires that a defendant seeking to compel disclosure of an informant's identity provide specific, nonspeculative assertions showing that the informant's identity "is necessary to his defense."  Skeens, 449 F.2d at 1070; see also Rugendorf v. United States, 376 U.S. 528, 535 (1964).  And the Circuit has regularly upheld nondisclosure where the defendant fails to make that showing.  See United States v. Bigesby, 685 F.3d 1060, 1063–64 (D.C. Cir. 2012) (upholding nondisclosure where defendant argued that confidential informant "might corroborate her theory that [another person present] solely possessed the drugs found in the search"); United States v. Warren, 42 F.3d 647, 654 (D.C. Cir. 1994) (while recognizing that "informant's testimony might have been helpful to [the defendant]," upholding nondisclosure because the helpfulness of that testimony was speculative); Mangum, 100 F.3d at 172 (upholding nondisclosure because (1) defendant's assertion that informant had access to knapsack where gun was found and may have planted gun in knapsack "was purely speculative," and (2) government proffered that informant was not party or witness to crime); cf. Brodie, 871 F.2d at 128 (suggesting that withholding informant's name would be improper where "the informant was the sole witness to one of the [drug] transactions, and the sole non-Government witness to the other").

4

Like the defendants in these cases, Abu Khatallah has not met his "heavy burden" to show that disclosure is warranted. He mainly contends that, if given the identity of the source of the telephone records, he could interview him or call him as a witness in order to undermine the records' reliability. But this proffered use is too speculative to warrant disclosure. Just as the source of the phone records *might* provide Abu Khatallah with helpful evidence or testimony undercutting the reliability of those records, the informants in the many cases upholding nondisclosure might well have provided testimony undercutting the government's theory of joint drug possession, see Bigesby, 685 F.3d at 1063, or cast doubt on the government's probable cause supporting a crucial search warrant, see Gaston, 357 F.3d at 70.

Abu Khatallah—like the defendants in these cases—makes a generalized argument that the source's identity would assist him, but provides no concrete basis for believing that the source would provide helpful information.[1] Nor does the Court see any such basis. To the contrary, the Court held a daylong evidentiary hearing and—based on a detailed account of the telephone records' provenance—found that they bore sufficient indicia of reliability to be admitted as Libyana's business records. See Memo. Op. & Order (filed Sept. 21, 2017 with the CISO) (ECF No. 354).

While the Defendant remains free to argue to the jury that the records are unreliable, he may not compel disclosure of the records' source based only on a hunch that the source could prove useful in making that argument, particularly where that hunch conflicts with the Court's prior findings about the records. Roviaro, 353 U.S. at 62 (citing, as a relevant factor, "the

---

[1] Abu Khatallah does propose one specific use for the source's name. But, as explained in a supplement to this Memorandum Opinion and Order containing classified inserts, the Court finds this proposed use insufficient to warrant disclosure. See Supp. to Mem. Op. & Order, Classified Insert 1 (filed November 9, 2017 with the CISO).

possible significance of the informer's testimony"). And Abu Khatallah has other ways to "cast doubt" on the reliability of the phone records, Bell, 506 F.2d at 219–20 ("Conceivably the informant could have denied the alleged drug sale, but he was not the only one who might have cast doubt on it."), as the Government has agreed to stipulate to the fact that the records were obtained from Libyana without the company's permission.

Finally, before requiring disclosure of a government source, the court must consider the *risks* posed by disclosure, as these risks inform the case-by-case balance between "the public interest in protecting the flow of information against the individual's right to prepare his defense." Roviaro, 353 U.S. at 629; United States v. Yunis, 867 F.2d 617, 625 (D.C. Cir. 1989) (in construing the classified information privilege, which is based on the informant's privilege, recognizing "that the language in Roviaro suggests such a balancing test"). In other words, there is a greater public interest in protecting against disclosure where disclosure could risk the informant's safety, see, e.g., United States v. Jiles, 658 F.2d 194, 198, or could shut down an important channel of information to law enforcement, see, e.g., Bell, 506 F.2d at 219–20 (approving of district court's consideration of informant's repeated effectiveness in denying disclosure of his identity). Here, even if Abu Khatallah had asserted a nonspeculative need for the source's identity, the Court believes—based on representations in an *ex parte* declaration submitted by the Government—that disclosure of this particular source's identity would pose a grave risk to national security. Specifically, the safety of this source and his family could be placed in jeopardy if his procurement of the telephone records were discovered. And, at a minimum, disclosure could chill the Government's ability to obtain intelligence information in or about Libya. These risks cut further against requiring disclosure.[2]

---

[2] See Classified Insert 2.

Therefore, it is hereby

**ORDERED** that Abu Khatallah's motion to compel the disclosure of the Government's source is DENIED. It is further

**ORDERED** that, pursuant to CIPA § 3, the identity of the telephone records' source shall not be disclosed.

**SO ORDERED.**

 

 

CHRISTOPHER R. COOPER
United States District Judge

Date: <u>November 9, 2017</u>