**UNITED STATES of America**

v.

**Kevin D. MANGUM, Defendant.**

**Crim. No. 94–411 (CRR).**

United States District Court, District of Columbia.

Jan. 11, 1995.

---

Peter R. Zeidenberg, Asst. U.S. Atty., Washington, DC, for Government.

Peter A. Krauthamer, Asst. Federal Public Defender, Washington, DC, for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

On December 19, 1994, prior to the trial of Defendant Kevin D. Mangum, the Court conducted an evidentiary hearing on the Defendant's "Motion to Suppress Tangible Evidence," as well as the Defendant's "Motion for Disclosure of Confidential Informant and Exculpatory Information." On that date, the Defendant also filed a "Motion to Bifurcate Trial or, in the alternative, for Severance of Counts." Moreover, during trial the Defendant filed a "Motion in Limine to Preclude Admissibility of All Statements Allegedly Made by Kevin Mangum as a Violation of Federal Rule of Criminal Procedure 16," and a "Motion Requesting an Evidentiary Hearing on Identity of Informant and Reconsideration of Disclosure." As set forth below, the Court, after holding a hearing, denied the Motion to Suppress and the Motion for Disclosure of Confidential Informant. In addition, the Court granted the Motion to Bifurcate Trial, as hereinafter provided, but denied the Motion in Limine and the Motion Requesting an Evidentiary Hearing on the identity of the informant. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law with respect to all of the foregoing motions, as required by Fed.R.Crim.P. 12(e). *See United States v. Williams,* 951 F.2d 1287 (D.C.Cir.1991).

### BACKGROUND

On October 18, 1994, a federal Grand Jury returned an Indictment charging the Defendant with unlawful possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), possession of a firearm with an obliterated, removed, changed and altered serial number, 18 U.S.C. § 922(k), carrying a pistol without a license, 22 D.C.C. § 3204(a), possession of an unregistered firearm, 6 D.C.C. § 2311(a), and possession of unregistered ammunition, 6 D.C.C. § 2361(3). On December 19, 1994, a hearing was held on the Defendant's "Motion to Suppress Tangible Evidence" and his "Motion to Disclose Identity of Confidential Informant and Exculpatory Information." On December 20, 1994, the Defendant proceeded to trial on the ex-felon count only, following a colloquy with the Court regarding the Defendant's "Motion to Bifurcate Trial or, in the alternative, for Severance of Counts." That same day, the jury returned a verdict convicting the Defendant of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

At the pretrial hearing, the Government called two witnesses, officer Leon D. Johnson and Detective Andre Williams, who testified that prior to September 3, 1994, Detective Williams received a tip from a reliable informant advising him that it was the custom of one Kevin Mangum to carry a handgun either on his person or in a backpack to or from work at a barber shop located in the 700 block of H Street, Northeast. According to the informant, the Defendant stored the gun in the backpack during his workday at a barber shop. The informant described the Defendant as a light-skinned male, approximately 6' tall and 200 pounds, with a stocky build, and later provided the police with a photo of the Defendant. The informant further stated that at the end of the day, the Defendant would be picked up by a black Nissan with Virginia license plate number NOL–113. According to Detective Williams, the informant stated that when the Defendant left his workplace, he would have the handgun either on his person or in the backpack.

Metropolitan Police Officers established an observation post near the barber shop on

September 3, 1994, and observed a black Nissan Sentra with Virginia tags NOL 113 drive past the officers' observation post and park in front of the barber shop. Thereafter, a man fitting the description provided by the informant and later identified as Kevin Mangum exited the barber shop carrying a brown backpack, and approached the trunk of the black Nissan. The driver opened the trunk, and the Defendant placed the backpack inside. The Defendant then entered the back seat of the car. The car took a U-turn and drove eastbound on H Street. The police stopped the car at the intersection of 12th and H Streets, Northeast. After patting down the car's occupants, the officers asked the driver to open the vehicle's trunk. Upon inquiry, the driver denied ownership of the backpack located inside the trunk. The Defendant also denied ownership of the backpack, claiming the bag belonged to the driver. The officer then opened the bag, pulled out a pair of denim shorts containing the driver's license of Kevin Mangum, and recovered from the bag a fully loaded 9 millimeter "Glock" handgun.

Detective Williams testified that the informant had provided the police with information on approximately 10–15 prior occasions, and that the information proved to be reliable every time. He further testified that such information resulted in several indictments and arrests, and that the informant was still working on two cases with the police. Detective Williams explained that the informant provided the information as part of an agreement resulting in the dismissal of a pending charge against him.

## DISCUSSION

### I. THE MOTION TO SUPPRESS WAS DENIED BECAUSE THE POLICE CONDUCT WAS JUSTIFIABLE UNDER THE FOURTH AMENDMENT AND, IN ANY EVENT, THE DEFENDANT DISCLAIMED ANY INTEREST IN THE BACKPACK

As a preliminary matter, the Court observes that the question of whether the handgun should have been suppressed involves several stages of inquiry that counsel for both parties failed to distinguish adequately in their briefs or at oral argument. In his Motion to Suppress, the Defendant argues that "[a]t the time of the stop, the police did not possess probable cause to search and seize Mr. Mangum or the car he was riding in or any contents contained in the car." Motion to Suppress, at 2. He further argues, in sum, that "[t]he information provided by the unidentified source did not provide the police with sufficient facts to engage in such conduct." *Id.* At the hearing, defense counsel raised an additional argument, namely, that if the Court were to find that the informant was reliable, then the police unlawfully failed to obtain a warrant in advance of the arrest and search of the trunk and backpack.

The Court observes that the Defendant did not specifically challenge the legality of the stop of the vehicle, although the Government focuses a large portion of its opposition to the Motion to Suppress on that issue. The Government further argues by written pleading that the Defendant failed to allege, and indeed did not possess, a reasonable expectation of privacy in the bag. In response to defense counsel's contention that the police should have obtained a warrant, Government counsel asserted at oral argument that only upon corroboration of the informant's tip was there probable cause for an arrest and/or search warrant and that, by the time the corroboration was obtained, such warrants were unnecessary.

In view of the imprecise nature of the arguments before the Court, the Court shall address each stage of the Fourth Amendment inquiry at bar, notwithstanding the fact that defense counsel did not do so. At bottom, the arguments of counsel for both parties turn on whether the police action was justifiable based on the informant's tip and the subsequent corroboration. The Court holds that it was.

■ The first issue is whether the stop of the vehicle and investigative detention of the Defendant was lawful. In order to make an investigatory stop of a suspect's car, the police must have a reasonable suspicion of wrongdoing, a standard that is less demanding than probable cause and one which "can arise from information that is less reliable

than that required to establish probable cause." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture.'" *White*, 496 U.S. at 330, 110 S.Ct. at 2416 (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981)).

In addition, "officers' orders to the occupants to get out of the car for questioning [are] compatible with an investigatory stop." *United States v. White*, 648 F.2d 29, 36–37 (D.C.Cir.), *cert. denied*, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981). Thus the Court of Appeals for the District of Columbia Circuit has condoned the investigative detention and weapons search of a suspect based on an anonymous tip, corroborated by observation. *United States v. McClinnhan*, 660 F.2d 500, 503 (D.C.Cir.1981).

■ In the instant case, the Court finds that the police had reasonable suspicion to stop the vehicle, to order the occupants out of the vehicle, and to pat them down. The Supreme Court has found reasonable suspicion sufficient to justify an investigatory stop where an *anonymous* tip is corroborated, and noted that the higher the degree of a tip's reliability, the less further information required by the police to justify an investigatory stop. *White*, 496 U.S. at 330–31, 110 S.Ct. at 2416–17. As further explained below, the informant's tip in the instant case was both highly reliable and fully corroborated, providing the officers with reasonable suspicion to stop the car, direct the occupants out of the car, and perform a pat-down search for weapons.

■ The Defendant, however, characterizes this police conduct as an arrest. Motion to Suppress, at 2. The Court of Appeals for this Circuit has held that even the drawing of guns does not convert a stop into an arrest, so long as the officers acted reasonably and had sufficient cause to make a *Terry* stop. *See White*, 648 F.2d at 36 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d

889 (1968)). In the instant case, the Court finds that the officers acted reasonably in directing the Defendant to exit the car, and in patting him down, in view of the informant's tip that he might be carrying a handgun on his person, if not in the backpack. The police did not invoke any force or threat of force which would cause the Court to question whether the lawful investigative stop and detention was actually an arrest. Thus, the Defendant's argument on this point must fail.

■ Next, the inquiry turns to whether the warrantless search of the backpack was justified. It is a "cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (internal quotation marks omitted)). The "automobile exception" to the warrant requirement allows "[t]he police [to] search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Acevedo*, 500 U.S. at 580, 111 S.Ct. at 1991. Thus, under *Acevedo*, the police may search containers located within an automobile, and need not hold the container pending issuance of a warrant, even if they lack probable cause to search the vehicle as a whole. *Id.*

The facts of the instant case fall squarely within the holding of *Acevedo*. In *Acevedo*, the police observed the defendant leave an apartment, known to contain marijuana, with a brown paper bag the size of marijuana packages they had seen earlier. The defendant placed the bag in his car's trunk and, as he drove away, the police stopped the car, opened the trunk and the bag, and found the drugs. The Court upheld the warrantless search, finding that the police had probable cause to believe that the paper bag in the vehicle's trunk contained marijuana.

Similarly, the Court's review of the totality of the circumstances surrounding the government action in this case confirms that the police had probable cause to believe that the backpack in the trunk of the car contained a handgun. The reliability of the confidential informant, coupled with the police corroboration of virtually every detail of his or her story, established the probable cause for the police conduct.

As counsel for the Defendant conceded, if the Court credits the testimony of the two Government witnesses, Officer Johnson and Detective Williams, the informant was highly reliable. Detective Williams testified that the informant had provided critical information on 15–20 former occasions which, as of yet, led to approximately 6 convictions.

In addition, as the Court of Appeals for this Circuit has explained, "[w]here an informant's tips are concerned, the task turns in large part on independent police work corroborating the details of the informant's charge." *United States v. Dawkins,* 17 F.3d 399, 404 (D.C.Cir.1994). Here, the informant told the police where the Defendant would be, what he looked like, the make, color and license plate number of the vehicle he would be driving in, and that he would be carrying a backpack with a gun either inside the backpack or on his person. The police confirmed the details of the tip through observation, and lawfully performed a pat-down search that revealed no weapons on the Defendant's person. Accordingly, the police had probable cause to believe that the backpack contained a handgun, and the search of the backpack was justifiable under *Acevedo.*

In his brief, the Defendant argues that the corroborated tip did not establish probable cause for the police activity because it involved only "innocent details of daily life." Motion to Suppress, at 3. However, "[i]n some circumstances, it may be enough that law enforcement officers confirm the tip's innocent details, for 'seemingly innocent activity [may become] suspicious in light of the initial tip.'" *Dawkins,* 17 F.3d at 404 (quoting *Illinois v. Gates,* 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983)). Thus, in *McClinnhan,* the Court of Appeals for this Circuit held that where "offi-

cers were informed that the suspect was armed, and the reliability of the tipster's other information had been confirmed by personal observation," the warrantless search and seizure of the defendant's briefcase, in which a sawed-off shotgun was found, was justified. *McClinnhan,* 660 F.2d at 504. Similarly, the Court finds here that the corroboration of even the innocent details of the informant's highly reliable tip created the probable cause supporting the police activity in this case.

■ Counsel for the Defendant raised an additional argument at the hearing, to wit, that if the Court were to credit the Government witnesses' testimony and find that the informant was reliable, then the police should have obtained a warrant in advance of the Defendant's arrest and the search of the backpack. Counsel for the Defendant argued that, according to the testimony proffered at the hearing, the informant provided the information 3 to 7 days prior to the arrest and search, thereby affording ample time to obtain a warrant.

In response, the Government argued that the informant's tip alone was insufficient to create probable cause to obtain a warrant, and that only upon the police corroboration of the informant's tip was there probable cause to arrest the Defendant or to search the trunk of the car and the backpack; at that point, the Government continued, neither an arrest warrant nor a search warrant were necessary or practicable.

First, with respect to the suggestion that an arrest warrant should have been secured, "while the Court has expressed a preference for the use of arrest warrants when feasible, it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." *Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975) (citation omitted). *See also Powell v. Nevada,* —— U.S. ——, —— n. 1, 114 S.Ct. 1280, 1287 n. 1, 128 L.Ed.2d 1 (1994) (Thomas, J., dissenting). Accordingly, as the Court finds, for all the reasons discussed herein, that the Defendant's arrest was supported by probable cause, the Defendant's contention that the officers failed to

secure an arrest warrant provides no basis to suppress the evidence at issue.

Second, the Court finds "speculative ... the notion that the investigating officers could have obtained a search warrant for the [backpack]" absent corroboration of the informant's tip. *McClinnhan,* 660 F.2d at 505. Notwithstanding the reliability of the informant in the instant case, as *Dawkins* makes clear, the corroboration of an informant's tip is highly pertinent to a finding of probable cause. Further, the Court observes that such corroboration represents careful police work that serves the interests of those, such as the Defendant, who are suspected of criminal activity. Thus, the Court cannot find, as the Defendant's position would suggest, that the failure of the police to obtain a warrant pursuant to the informant's tip alone nullifies the probable cause that existed following thorough corroboration of virtually every detail of that tip. In the instant case, the police had clear probable cause to search the trunk of the black Nissan and the backpack contained therein once they corroborated other details of the tip.

■ Finally, the Court finds that, in any event, the Defendant has no standing to object to the search of the bag taken from the trunk of the black Nissan of which the Defendant was a passenger. Officer Johnson testified that, when asked, the Defendant stated that the backpack did not belong to him, but to the driver. Officer Johnson also testified that the driver denied ownership of the bag. As the Government contends, it is well settled that "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Caicedo–Llanos,* 960 F.2d 158, 162 (D.C.Cir.1992) (citation omitted). In particular, "the defendant as the movant to suppress evidence has the burden of establishing his 'legitimate expectation of privacy.'" *United States v. Sneed,* 732 F.2d 886, 888 (11th Cir.1984). *See also United States v. Richardson,* 764 F.2d 1514, 1526 (11th Cir.), *cert. denied,* 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985) (trial court properly denied requests to suppress evidence obtained during search where "[n]o allega-

tion of ownership or other legitimate expectation of privacy appeared in the[ ] motions to suppress...."). Counsel for the Defendant conceded these principles, but argued that he was not aware of his client's alleged statement denying ownership of the backpack until recently.

While this proffered justification does not vitiate the need to establish standing for a suppression motion, the Court nonetheless finds that the Defendant disclaimed any expectation of privacy in the backpack. The Court credits the testimony of Officer Johnson that the Defendant, upon inquiry, denied any ownership or interest in the backpack. Accordingly, "[s]ince ... on the facts adduced [the Defendant] had disclaimed any interest, hence any expectation of privacy, in the contents of the [backpack], the motion to suppress [was] properly denied." *United States v. Washington,* 677 F.2d 394, 395 (4th Cir.), *cert. denied,* 459 U.S. 854, 103 S.Ct. 120, 74 L.Ed.2d 105 (1982).

## II. THE DEFENDANT HAS FAILED TO MEET HIS HEAVY BURDEN OF ESTABLISHING THAT THE IDENTITY OF THE INFORMANT IS NECESSARY TO HIS DEFENSE

■ As grounds for his "Motion for Disclosure of Confidential Informants and Exculpatory Information," counsel for the Defendant argued at the hearing that, if the informant had access to the backpack prior to the arrest, his testimony would be highly relevant to his client's defense and could even be exculpatory. Detective Williams testified that the informant has provided information to law enforcement officials in the past in exchange for the dismissal of a criminal charge pending against him. Defense counsel thus argued that the informant had a motive to provide information to the police which would lead to arrests and convictions. He further contended that, in turn, if the informant had access to the backpack during the day, he might have planted the handgun in the backpack in order to assist in securing another arrest and thereby curry favor with the Government.

The law is clear that "the determination of whether to disclose the identity of a confidential police informant requires the District Court to balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.'" *United States v. Warren*, 42 F.3d 647 (D.C.Cir.1994). However, "'*Rovario* does not require disclosure of an informant who was not an actual participant in or a witness to the offense charged.'" *Id.* (quoting *United States v. Skeens*, 449 F.2d 1066, 1071 (D.C.Cir.1971)). "Accordingly, defendants face 'a heavy burden ... to establish that the identity of an informant is necessary to the defense.'" *Id.* (quoting *id.* at 1070). Moreover, and critical to the Court's instant inquiry, the recent *Warren* Court further added that "[s]peculation as to the information the informant may provide is insufficient." *Id.*

Applying these principles, the Court finds that the Defendant has not met his burden of overcoming "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Rovario v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). First, the Government represents that the informant was not a witness to the alleged criminal activity by the Defendant, and that it will not seek to introduce at trial any of the information that the informant provided to the police. Opposition, at 2, 3. Thus, "nothing in this record establishes that the informant was a participant, an eyewitness, or a person who was otherwise in a position to give direct testimony concerning the crime." *Skeens*, 449 F.2d at 1070. Further, "[t]he government presented its case without mention of the informant, and his information was not used at trial." *Id.* As the evidence shows that "'the informer was an informer and nothing more,'" "[t]he identity of the government informant in this case is not information whose disclosure *Brady* requires." *United States v. Rowell*, 979 F.2d 248, 1992 WL 336989 at *2 (D.C.Cir.1992) (quoting *Miller v. United States*, 273 F.2d 279, 281 (5th Cir.1959), *cert. denied*, 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960), and citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).

In addition, the Court of Appeals' findings in *Skeens* provide a factual predicate for the Court's determination in the instant case. In *Skeens*, the Defendant–Appellee argued "that given the intimate knowledge the informant seemed to have of the operation, it is likely that he knows a great deal more than has been revealed," to the extent that "the informant may have been the driver of a 'getaway car.'" *Skeens*, 449 F.2d at 1070. The defendant in *Skeens* contended on appeal that "he should have been permitted to question the informant in order 'to get to the core of the matter.'" *Id.* The Court of Appeals rejected his claim.

At bottom, the Defendant makes a very similar argument here, namely, that the informant's involvement may have been more than meets the eye, because if the informant had access to the backpack, he may have planted the gun in the backpack. Thus, like in *Skeens*, the Defendant seeks to examine the informant to "get to the core of the matter" and see if the informant planted the gun or otherwise possesses any exculpatory information. Again, however, "speculation [that the informer might possibly be of some assistance] is not sufficient to meet the heavy burden which rests on an accused to establish that the identity of the informant is necessary to his defense." *Id.* Rather,

> [i]f the informer's relation to the acts leading directly to or constituting the crime may be assumed from a fertile imagination of counsel, the Government in practically every case would have to prove affirmatively that the informant had not done any such likely acts. Having done that, all would be revealed and the informer privilege, deemed essential for the public interest, for all practical purposes would be no more.

*Id.* at 1071 (quoting *Miller*, 273 F.2d at 281).

Finally, as counsel for the Government observed, the Defendant was free to cross-examine Government witnesses or put on any evidence of his own at trial to establish that another person had access to the backpack prior to the arrest. Because there is no evidence in the record supporting the Defendant's speculation that the informant actively

participated in the offense, however, the Defendant is not entitled to know the informant's identity. The Court simply cannot find that the Defendant has met his burden of showing that the informant's testimony is necessary to his defense so as to justify placing the informant's safety in jeopardy, as the Government urges would otherwise result.

### III. THE COURT RESOLVED THE DEFENDANT'S ADDITIONAL MOTIONS IN KEEPING WITH ITS PRIOR RULINGS, THE RELEVANT LAW, AND THE REPRESENTATIONS OF COUNSEL

As a threshold matter, the Court observes that the chronology of the filings of pleadings just before and during this trial demands comment. On December 16, 1994, the Friday before trial, the Defendant filed a "Motion to Bifurcate Trial or, in the alternative, for Severance of Counts." A copy of this motion did not reach the Court until it was handed up by counsel on the first day of trial. On December 20, 1994, the second day of trial, counsel for the Defendant sent the Court, by facsimile to Chambers, a "Motion in Limine to Preclude Admissibility of All Statements Allegedly Made by Kevin Mangum as a Violation of Federal Rule of Criminal Procedure 16," and a "Motion Requesting an Evidentiary Hearing on Identity of Informant and Reconsideration of Disclosure."

Thereafter, after both sides rested, and before the Court charged the jury, the Court asked counsel for the Defendant whether he had any requests for charge. He said he did not. Following the luncheon recess during which the Court finalized its jury instructions, however, counsel for the Defendant handed the Court a "Jury Instruction on Defense Theory of the Case," which he also sent the Court by fax during lunch, but which the Court nevertheless did not receive prior to resuming the bench. The Court observes that counsel for the Government as well as counsel for the Defendant failed to comply with the Court's requirement that a complete set of proposed jury instructions be submitted before trial. Nevertheless, the Court modified its final instructions at the charge conference prior to closing arguments so as to include the Defendant's theory of the case, as requested by his counsel at that late date.

■ While the Court welcomes written pleadings setting forth proper authorities, the Court would like to take this opportunity to advise counsel that, as set forth in the Court's standard Pretrial and Trial Order, any such motions should be filed in advance of trial, whenever possible, with courtesy copies to Chambers. The Court acknowledges defense counsel's response that he was unaware of the grounds for at least one of these motions, namely, the Motion in Limine, until just prior to trial. However, the Court must emphasize that filing motions by fax to Chambers during trial is not authorized by the Local Rules, nor is it appropriate or proper. Absent particular direction by the Court, such motions must be filed with the Clerk's Office with a courtesy copy hand-delivered to Chambers.[1] The courtesy copy is critical as, in reality, copies of pleadings do not reach Chambers until at least a full day after documents are filed with the Clerk's Office. As in this case, failure to ensure proper delivery of copies to Chambers in advance of Court appearances deprives the Court of the opportunity to review critical pleadings in advance of assuming the bench.

That being said, the Court shall set forth its reasons behind the resolution of these three defense motions raised during trial.

---

1. See Local Rule 106:

(a) PLACE AND MANNER OF FILING.

All papers relating to pending action shall be filed with the Clerk unless otherwise directed by the Court.

(b) CORRESPONDENCE WITH COURT.

Except when requested by a judge, correspondence shall not be directed by the parties or their attorneys to judge, nor shall papers be left with or mailed to a judge for filing.

(c) NUMBER OF COPIES.

The original and one copy of every pleading, motion or other paper shall be filed with the Clerk.

(d) ELECTRONIC TRANSMISSION.

No pleading, motion or other document shall be transmitted to the Clerk for filing by means of electronic facsimile transmission except with express leave of Court.

With respect to the Motion to Bifurcate Trial, the Court discussed the alternatives with counsel for both sides and, without objection, bifurcated the trial such that Count one, Unlawful Possession of a Firearm by a Convicted Felon, would be tried alone, while the other four Counts would be tried together at a later date. *See United States v. Dockery*, 955 F.2d 50, 55 n. 4 (D.C.Cir.1992) (to avoid undue prejudice when trying an ex-felon count with other counts, the trial judge may, among other means, conduct "a separate trial of the ex-felon count.").

With respect to the Motion in Limine, counsel for the Government acknowledged his error in failing to provide defense counsel with all statements allegedly made by the Defendant prior to trial, as required by Rule 16 of the Federal Rules of Civil Procedure. Counsel for the Government further represented, however, that he would not raise these statements in his case-in-chief, and argued that precluding his use of the same on rebuttal would be an unduly harsh sanction under Rule 16. In view of Government counsel's representations, the Court denied the Defendant's Motion. Indeed, no evidence of any such statements was introduced at trial; thus, the Defendant was in no way prejudiced by this ruling.

Finally, the Court denied the Defendant's "Motion Requesting an Evidentiary Hearing on Identity of Informant and Reconsideration of Disclosure," in view of its earlier denial of the Defendant's Motion for Disclosure, and the sound reasons therefor. The Court held an evidentiary hearing on the Motion to Suppress, during which Detective Williams testified that the informant had a pending case dismissed in return for ongoing cooperation with the police department. As counsel for the Government argued, however, any further testimony regarding whether the informant had access to the backpack could have belied the purpose of maintaining confidentiality, in view of the potential for the Defendant to identify independently the informant with such information. As described above, the Court determined not to jeopardize the informant's privilege based solely on the Defendant's speculation that he was framed. The Defendant presented no new legal arguments in his latter motion which would lead the Court to upset its earlier ruling on that subject. Accordingly, his "Motion Requesting an Evidentiary Hearing on Identity of Informant and Reconsideration of Disclosure" was denied.