757 So.2d 1005 (1999)
Dewain Steele JENKINS, a/k/a Bubba Jenkins, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00991-COA.
Court of Appeals of Mississippi.
April 6, 1999.
Helen J. McDade, DeKalb, Attorney for Appellant.
Office of the Attorney General by Jeffrey Klingfuss, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., DIAZ AND THOMAS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Dewain Jenkins was convicted by a Neshoba County Circuit Court jury of two counts of possession with intent to sell two *1006 different controlled substances while also possessing a firearm. He was convicted. On appeal he argues that the name of a confidential informant whose information led to the search of Jenkins' home should have been disclosed, that a circumstantial evidence instruction was improperly denied, and that the verdict was based on insufficient evidence. We do not find merit in these claims and affirm.

FACTS
¶ 2. The residence of defendant Dewain "Bubba" Jenkins was searched by the Neshoba County sheriff, a deputy, and agents of the Mississippi Bureau of Narcotics on December 14, 1996. A search warrant had been acquired based on information provided by a confidential informant. Jenkins was there with his girlfriend and their small child. In bedrooms the officers found four weapons, a pill bottle with two rock-like substances, and substantial cash. In the kitchen were mechanical and electronic scales, crystal methamphetamine in a cloth bag, and a book on how to manufacture crystal methamphetamine. A "Scotch-Guard" aerosol can that could be opened and items hidden inside, that a bureau of narcotics officer stated was a type of container commonly used to hide drugs, along with an address book that the State argued revealed Jenkins's customers, were also discovered.
¶ 3. At trial Terry Buse, who had purchased methamphetamine from Jenkins months before the search, testified as to his purchases, and that he had agreed to work undercover with the bureau of narcotics. Jenkins's attorney theorizes that Buse was one of the confidential informants who provided the information that led to a search warrant being acquired. She asked Buse if he was one of the informants whose information was relied upon for the search warrant. Buse testified that he did not know. Buse is serving a twenty-year federal sentence.
¶ 4. Another witness testified that she purchased methamphetamine on the West Coast and in Montana for delivery to Jenkins to sell in Mississippi. The drugs were sent by commercial overnight delivery services and other means. Three of the law enforcement officers who conducted the search testified as to what occurred and what was found. An employee of the state crime lab testified as to the fact that what was discovered was methamphetamine and amphetamine.
¶ 5. Jenkins was convicted of both counts under the indictment.

DISCUSSION

1. Name of confidential informant
¶ 6. Two confidential informants were relied upon to acquire a search warrant. Jenkins believes that the first was Terry Buse, whose testimony at trial was from knowledge gained months before the search. The second informant was said to have been in Jenkins' home earlier in the day of the search. The name of neither informant was ever disclosed to Jenkins.
¶ 7. On the morning of trial, the defendant requested the informants' names. The trial court relied on the fact that neither informant was alleged to be present during the time of the search or arrest to prevent the disclosure. Two other requests later in the trial were also denied.
¶ 8. Jenkins argues that the informant who had been in the home earlier in the same day as the search had to be disclosed. No appellate argument is made that it was error to fail to name the first informant. The informant stated that he had seen a quarter-ounce package of methamphetamine sold for $250. According to Jenkins, no similarly large quantity of drugs was found during the search and therefore such a sale earlier in the day of the search is inconsistent with the evidence. However, the 17.40 grams of methamphetamine and amphetamine mixed together in one pill bottle is more than half an ounce. According to Jenkins, the informant's presence earlier on the day of the *1007 search raises the possibility that it was the informant who placed the drugs in the places where they were found and that Jenkins was ensnared by the confidential informant's trap. Jenkins and his girlfriend both testified that earlier in the day they had not seen the drugs in the places that law enforcement officers found them.
¶ 9. Jenkins and his live-in girlfriend both testified about people who were present at the home prior to the search. What in fact Jenkins may have been asking was for the State to identify which person among those who were known to have been at the house, was the confidential informant. With that person then on the stand, perhaps rigorous questioning would uncover that the informant planted the drugs. There is also the possibility that Jenkins is arguing that the informant was never seen by him at all, as he or she surreptitiously entered the house the morning of the search, planted the drugs, and left.
¶ 10. The issue of disclosure of names of confidential informants has frequently been litigated. A rule has been promulgated that balances the interest in personal safety and continuing utility of informants with the right of a defendant to have the evidence relevant to his defense. The starting place for review is the uniform circuit court rule regarding informants:
Disclosure of an informant's identity shall not be required unless the confidential informant is to be produced at a hearing or trial or failure to disclose his/her identity will infringe the constitutional rights of the accused or unless the informant was or depicts himself/herself as an eyewitness to the event or events constituting the charge against the defendant.
URCCC 9.04(B)(2).
¶ 11. A case much like the present one is Arnett v. State, 532 So.2d 1003 (Miss.1988). There a confidential informant called an officer with the bureau of narcotics with whom he had apparently been working. The officer was informed of events then occurring at a house. Using that information, a search warrant was acquired. The search uncovered 600 pounds of marijuana in the house. The defendant was convicted of possession of marijuana in a quantity greater than a kilogram. On appeal this issue was discussed:
Arnett argues that the identity of the confidential informant should have been made known to him because the confidential informant, by virtue of detailing specific information to the agents of the MBN, must have been or pretended to have been a participant in the crime.
Id. at 1007. The supreme court held that an informant who had sufficient detailed information to notify law enforcement officers of the presence of drugs in a house was not a material eyewitness nor a participant in the crime. The court relied on a similar case in which no disclosure was required when an informant saw drugs in a residence, relayed that information to authorities, but was not present during the search. Read v. State, 430 So.2d 832, 836 (Miss.1983). The defendant in Read was convicted of possession with intent to deliver a controlled substance. In neither Read nor Arnett was the defendant arguing that the informant might have planted the drugs.
¶ 12. The United States Supreme Court has recognized that the government has a privilege that protects the names of confidential informants, but due process places limits:
[T]he Due Process Clause has been held to require the Government to disclose the identity of an informant at trial, provided the identity is shown to be relevant and helpful to the defense, Roviaro v. United States, 353 U.S. 53, 60-61, 77 S.Ct. 623, 627-628, 1 L.Ed.2d 639 (1957)....
United States v. Raddatz, 447 U.S. 667, 679, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).
¶ 13. The foundation for these issues was laid in Roviaro. The court held that *1008 whether disclosure is necessary is a matter of a case-by-case factual determination:
We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
Roviaro, 353 U.S. at 60-61, 62, 77 S.Ct. 623 (footnotes omitted). Since every case depends on a mixture of "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors," it is not enough to resolve this issue just to note that Jenkins as well as the defendants in Read and Arnett were convicted for the possession of drugs in their residence. Jenkins's attorney made it plain that she challenged the evidence on the basis that someone without Jenkins's knowledge hid the drugs in the house, probably shortly before the search. We must decide if due process obligated the State to provide the name under the argument that it was necessary in the preparation of the defense.
¶ 14. A nearly identical issue arose in a case in which an informant notified a law enforcement officer that it was the defendant's custom to keep a handgun in his backpack at work, possession of which was illegal in the jurisdiction. United States v. Mangum, 871 F.Supp. 1486 (D.D.C.1995). Based on this information, surveillance was established, a person matching Mangum's description was seen, and he was arrested. Id. at 1488-89. Mangum demanded disclosure of the name of the informant, arguing that if the informant worked on a regular basis for the government and "had access to the backpack during the day, he might have planted the handgun in the backpack in order to assist in securing another arrest and thereby curry favor with the Government."
¶ 15. What the court found controlling is that Mangum was speculating as to what the informant might reveal. Without knowing who the informant might be, the defendant argued that the informant could have manufactured the entire crime for his own benefit. Id. at 1493. Though the privilege protecting confidential informants that was recognized by the United State Supreme Court in Roviaro must be set aside when it clashes with the due process rights of defendants, speculation is not sufficient. As the court noted,
[i]f the informer's relation to the acts leading directly to or constituting the crime may be assumed from a fertile imagination of counsel, the Government in practically every case would have to prove affirmatively that the informant had not done any such likely acts. Having done that, all would be revealed and the informer privilege, deemed essential for the public interest, for all practical purposes would be no more.
Id., quoting United States v. Skeens, 449 F.2d 1066, 1071 (D.C.Cir.1971).
¶ 16. We agree with these observations. If in every possession case in which a confidential informant was involved, the defendant merely by alleging that the drugs were planted could require the disclosure of the informant's name, the important privilege for informants would be destroyed.
¶ 17. The defendant was entitled to make this argument in front of the jury and did so. The motives of several State witnesses were attacked, the lack of credibility of various criminals called by the State to testify was argued, and the certainty in the defendant's mind that the mysterious confidential informant had planted the drugs was explained to the jury. The defendant was entitled to ask law enforcement witnesses about the incentives that informants are given to cooperate. That questioning occurred. Arguing *1009 that if only the informant could have been placed on the stand, the informant might have admitted to planting the drugs is entirely too speculative to permit us to find that the trial court was in error in maintaining the privilege for the informant's identity.
¶ 18. The trial court has discretion to determine whether the various considerations expressed in Rovario require that the confidential informant's name be disclosed. We are not saying that in a possession case in which the accused argues planted evidence, that a court is always within its discretion to deny the request. We only hold that we find no such abuse here.

2. Circumstantial evidence instruction
¶ 19. Jenkins submitted but was denied an instruction that "if any facts lend themselves to an interpretation of either innocence or guilt, then you must resolve this case in favor of the Defendant and find the Defendant not guilty." This version of a circumstantial evidence instruction was denied. The State says that Jenkins then had essentially to "except" to the denial of the instruction. In other words, he offered the instruction. It was denied. Jenkins then had to take exception. That is a vestige of a practice long abandoned, to take exception to the judge's ruling. Though there was some language in a case cited by the State that for a time seemed to give new life to that practice insofar as jury instructions were concerned, that has now been clarified. Nicholson, on Behalf of Gollott v. State, 672 So.2d 744, 752 (Miss.1996), clarified by Duplantis v. State, 708 So.2d 1327, 1339-40(Miss.1998). Litigants do not need to object to the denial of instructions that they themselves have offered. The issue of improper denial is preserved by tendering the instructions and asking that they be given. Id. Neither is it necessary to renew the objection in a motion for new trial. Jackson v. State, 423 So.2d 129, 131-32 (Miss.1982). There is no procedural bar to this issue.
¶ 20. On appeal Jenkins argues that all the evidence at best was circumstantial and that an instruction on such evidence had to be given. We agree that this a constructive possession case, i.e., the drugs were not found on Jenkins's person but in his residence. "A presumption of constructive possession arises against the owner of premises upon which contraband is found." Cunningham v. State, 583 So.2d 960, 962 (Miss.1991). The presumption is rebuttable. Id. However, the issue of whether Jenkins had exclusive dominion and control is a separate question from whether this is a circumstantial evidence case. Here, there is direct evidence of the existence of the drugs in Jenkins's house. That is stronger that a precedent that upheld the denial of a circumstantial evidence instruction when marijuana was found in the automobile that the defendant was driving but did not own. Boches v. State, 506 So.2d 254, 260 (Miss.1987). The discovery of the drugs in the car being driven by the defendant in Boches, just as the existence of the drugs in Jenkins's house, avoids the need for the instruction on circumstantial evidence.
¶ 21. For the first time on appeal, Jenkins argues that the State's instruction given to the jury on this issue was flawed. This instruction was given: "The Court instructs the Jury that where a person is occupying and exercising control over a premises, he is presumed to be in constructive possession in the contents of the premises." Jenkins states that it also should have insisted that the jury find that Jenkins exercised exclusive dominion and control over any illegal substance found. There was no objection to that effect during the consideration of instructions. Had defense counsel raised the need for some additional language in this instruction, the court might well have added it. We will not hold the trial judge in error for a matter not presented to him.
*1010 ¶ 22. We do not find the instruction potentially so flawed as to constitute a matter of plain error.

3. Quantity of drugs found too small to permit inference of intent to sell
¶ 23. What was discovered in Jenkins' house was only trace amounts of amphetamine (.04 grams) in a pill bottle, while another bottle contained 17.40 grams of methamphetamine mixed with amphetamine. The state crime lab witness said the .04 was a usable quantity, but acknowledged that it was "a very small amount."
¶ 24. Jenkins argues that this small amount takes away any presumption that Jenkins was possessing the drugs with the intent to sell. It is true that a large quantity of drugs can by itself create the inference of an intent to sell. Edwards v. State, 615 So.2d 590, 594 (Miss.1993). The existence of only a small quantity, though, does not remove the possibility of inferring intent. To analyze the evidence completely, it is necessary to consider that various items usable in drug manufacture were also found: two sets of scales, a book on manufacturing methamphetamine, one weapon in the same bag as some of the drugs, three other weapons, and a large amount of cash. Each of these is considered consistent with distribution of drugs and can be considered by a fact-finder as evidence of intent. In one precedent, the court found sufficient evidence to support the inference of intent to distribute from the seizure of "a brown paper bag which contained 27 small plastic bags of marijuana, $60.00 in cash, a large brown suitcase containing a large plastic bag full of loose marijuana, a set of scales, a white paper bag containing one plastic bag of marijuana in Coyne's car, an aluminum pan containing one plastic bag of marijuana, and a marijuana pipe." Coyne v. State, 484 So.2d 1018, 1022 (Miss.1986).
¶ 25. We find adequate evidentiary support for the finding of guilt of possession with intent to sell.
¶ 26. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I OF POSSESSION OF AMPHETAMINE WITH INTENT TO SELL WHILE IN POSSESSION OF FIREARMS AND COUNT II OF POSSESSION OF METHAMPHETAMINE WITH INTENT TO SELL WHILE IN POSSESSION OF A FIREARM AND SENTENCE OF 5 YEARS ON COUNT I AND 25 YEARS ON COUNT II, WITH A $10,000 FINE, IS AFFIRMED. SENTENCE IN COUNT I TO RUN CONSECUTIVELY TO SENTENCE IN COUNT II. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.