ROBERTS, J„ for the Court:
 

 ¶ 1. A jury sitting before the Harrison County Circuit Court found Roland Van-der Bond, Jr. guilty of both possession of methamphetamine with the intent to distribute it and possession of precursors with the intent to manufacture methamphetamine. After the jury found Bond guilty of both counts, the circuit court found that Bond qualified for enhanced sentencing as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007). The circuit court sentenced Bond to two concurrent fifteen-year sentences in the custody of the Mississippi Department of Corrections (MDOC). The State has not cross-appealed the legality of Bond’s sentences. In any event, Bond appeals and claims that the evidence was legally insufficient to support the verdict. Additionally, Bond claims that the verdict is contrary to the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On October 11, 2004, officers with the Long Beach Police Department searched a home at 20016 Merinda Lane in Long Beach, Mississippi. Cynthia Young owned the property, but she and Bond were both listed as occupants. Young was present at the time the officers executed the search warrant, but Bond was not present. However, one of Bond’s two vehicles, an Isuzu Rodeo, was parked on the property. Additionally, a checkbook that was found in the home contained checks for a joint account in Young’s and Bond’s names. The Merinda Lane address was printed on the checks.
 

 ¶ 3. Through their combined efforts, the officers found approximately twenty-four grams of methamphetamine, numerous precursors used to manufacture methamphetamine, and items that were indicative of past efforts to manufacture methamphetamine. The precursors will be discussed in much greater depth in the analysis portion of this opinion. Additionally, officers found a digital scale and numerous small plastic “zip-lock” bags that were indicative of intent to sell or distribute small quantities of narcotics.
 

 ¶4. The officers arrested Young, but they were not able to arrest Bond that day. However, Bond was arrested on October 18, 2004. On February 13, 2006, a Harrison County grand jury returned a two-count indictment against Bond and Young, charging them with: (1) possession of methamphetamine with the intent to distribute it and (2) possession of precursors with the intent to manufacture methamphetamine.
 
 [1]
 
 Bond waived arraignment and pled “not guilty.”
 

 ¶ 5. On May 14, 2007, pursuant to plea negotiations with the prosecution, Young pled guilty to a lesser charge of possession of a controlled substance. The prosecution recommended that Young be sentenced to placement in the Harrison County Drug Court. Accordingly, the circuit court deferred adjudication of Young’s guilt and placed her in the drug court program.
 

 ¶ 6. On December 3, 2008, Bond went to trial. The prosecution called eight wit
 
 *589
 
 nesses. Five of those witnesses were law enforcement officers who participated in the search of the house on Merinda Lane. The prosecution also called the officer who transported Bond to the Long Beach Police Department on October 18, 2004. Additionally, the prosecution called a witness from the Mississippi Crime Laboratory who tested many of the substances recovered during the search.
 

 ¶ 7. The prosecution also called Young as a witness. Young implicated Bond for manufacturing methamphetamine as well as for intent to distribute methamphetamine. Young also testified that Bond lived with her, although she actually owned the property.
 

 ¶ 8. After the prosecution rested its case-in-chief, Bond called four witnesses. Bond’s defense theory was that he did not live at the house on Merinda Lane at the time of the search. A friend of Bond’s, Shannon Mercer, testified that Bond lived with a man named Shannon Owen at the time of the search. Another friend of Bond’s, Jason Mills, testified that Bond lived with Owen because Mills had visited Bond at Owen’s house. Bond also called Owen, who testified that he had a small addition adjacent to his house. Owen also testified that Bond had moved into that addition sometime during the month prior to the search of the house on Merinda Lane. However, Owen also testified that Bond stayed there rent-free and he did not stay in the addition every night of the week.
 

 ¶ 9. Bond also called Young’s father, William Donaldson, as a witness. Donaldson’s testimony did not benefit Bond. Donaldson testified that Bond removed his personal property from Young’s house after Bond had been arrested and released from custody. According to Donaldson, Bond had so much personal property in Young’s house that it was necessary to use two vehicles to move all of his personal property.
 

 ¶ 10. Bond chose to testify. Bond consistently maintained that he did not live with Young at the time of the search. He explained the presence of his Isuzu Rodeo by testifying that Young let him store one of his two vehicles at her house. Bond testified that he had been driving his Dodge Viper, so he left his Isuzu Rodeo at Young’s house. He admitted that he allowed Young to drive his Isuzu Rodeo, but he testified that she was not allowed to drive his Dodge Viper.
 

 ¶ 11. Bond attempted to mitigate the fact that his name was on a joint checking account with Young with a listed address at Merinda Lane. According to Bond, he had established the account with Young, but he had not actively participated in depositing or withdrawing any money in or from that account for a long time. Additionally, Bond testified that he had never used methamphetamine and that he had never seen any of the drug-related items presented by the prosecution.
 

 ¶ 12. After Bond rested, the prosecution called two rebuttal witnesses. One of those witnesses had testified during the prosecution’s case-in-chief. On rebuttal, that witness testified that when Bond was taken into custody, Bond had listed the Merinda Lane address as his residence when Bond filled out the “custody log.” That witness had also testified that he had stopped Bond two weeks before the search, and at that time, Bond said that he lived at the Merinda Lane address.
 

 ¶ 13. As previously mentioned, the jury found Bond guilty of both counts listed in the indictment. The circuit court set Bond’s sentencing hearing for December 18, 2008. At the sentencing hearing, the circuit court heard evidence that Bond had previously pled guilty to burglary and re
 
 *590
 
 ceiving stolen property charges. Accordingly, the circuit court found that Bond qualified for enhanced sentencing as a habitual offender pursuant to section 99-19-81 of the Mississippi Code.
 

 ¶ 14. Despite having found that Bond qualified for enhanced sentencing as a habitual offender, the circuit court did not sentence Bond to the maximum sentences for his two convictions. Instead, the circuit court sentenced Bond to two concurrent fifteen-year sentences.
 
 [2]
 
 Following his unsuccessful post-trial motions for a judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial, Bond appeals.
 

 ANALYSIS
 

 I. SUFFICIENCY OF THE EVIDENCE
 

 ¶ 15. Bond claims the circuit court erred when it denied his motion for a JNOV. “A motion for [a JNOV] is a challenge to the sufficiency of the evidence.”
 
 Gilbert v. State,
 
 934 So.2d 330, 335 (¶ 9) (Miss.Ct.App.2006). As our Mississippi Supreme Court has stated:
 

 in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a JNOV], the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
 

 
 *591
 

 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (internal citations and quotations omitted). However, this Court will determine that there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.”
 
 Id.
 
 (internal citations and quotations omitted).
 

 ¶ 16. Bond’s argument on appeal focuses solely on his conviction for possession of methamphetamine with the intent to distribute. Accordingly, Bond’s conviction for possession of precursors with the intent to manufacture methamphetamine is not at issue. Bond does not revisit his argument that he did not live at the house on Merinda Lane. Instead, Bond argues that the prosecution presented insufficient evidence that he intended to distribute methamphetamine.
 

 ¶ 17. Bond argues that the quantity of methamphetamine recovered did not demonstrate any intent to distribute it. According to Bond, the amount of methamphetamine discovered could have been solely for one’s personal use. Bond’s argument relies on the following reasoning: (1) Agent Allen Davis of the Mississippi Bureau of Narcotics testified as an expert witness and stated that an average user of methamphetamine uses approximately one-half of a gram to a gram of methamphetamine per day; (2) there were approximately twenty-four grams of methamphetamine recovered; and (3) divided between two users, the quantity of methamphetamine discovered would have supported two users for approximately twelve to twenty-four days. Bond reasons that an average user could feasibly keep twelve to twenty-four days’ worth of methamphetamine for his or her personal use.
 

 ¶ 18. One critical flaw in Bond’s reasoning is that he testified that he did not use methamphetamine, so his inclusion of two users in his formula is faulty. What is more, “a large quantity of a controlled substance can alone establish an intent to distribute.”
 
 Blissett v. State,
 
 754 So.2d 1242, 1244 (¶ 10) (Miss.2000). “The existence of only a small quantity, though, does not remove the possibility of inferring intent.”
 
 Jenkins v. State,
 
 757 So.2d 1005, 1010 (¶ 24) (Miss.Ct.App.1999). However, in resolving this issue, it is not necessary to engage in some semantic discussion regarding whether the quantity of methamphetamine should be characterized as “large” or “small.”
 

 ¶ 19. In
 
 Edwards v. State,
 
 795 So.2d 554, 565 (¶ 45) (Miss.Ct.App.2001), this Court reviewed a challenge of the sufficiency of the evidence to support a conviction of possession of methamphetamine with the intent to distribute. The defendant in
 
 Edwards
 
 had thirty-three grams of methamphetamine in a clear plastic bag in an outside compartment of a truck and six grams of methamphetamine on his person.
 
 Id.
 
 This Court noted that “[tjhere was testimony that normal personal consumption of methamphetamine averaged from 1/2 gram to two grams.”
 
 Id.
 
 Citing the legal principle that “[a] presumption can arise from the quantity alone of an intent to sell drugs and not just use them personally,” this Court found sufficient evidence to support the conviction because, in that case, law enforcement officers “recovered ... at least twenty times the amount for personal use” and the law enforcement officers found scales in the defendant’s truck “that were of the kind often used to weigh drugs.”
 
 Id.
 

 ¶ 20. In
 
 Jenkins,
 
 757 So.2d at 1010 (¶¶ 23, 25), this Court found evidentiary
 
 *592
 
 support for a conviction for possession of methamphetamine with the intent to distribute where there was less methamphetamine found than was found in the case presently before us. In
 
 Jenkins,
 
 a law enforcement officer found “trace amounts of amphetamine (.04 grams) in a pill bottle, while another bottle contained 17.40 grams of methamphetamine mixed with amphetamine.”
 
 Id.
 
 However, this Court held that it was “necessary to consider that various items usable in drug manufacture were also found.”
 
 Id.
 
 at (¶ 24). Because there was other evidence discovered that was “considered consistent with distribution of drugs [that evidence could] be considered by a fact-finder as evidence of intent.”
 
 Id.
 

 ¶ 21. In this case, Sergeant Ken Brazil of the Long Beach Police Department testified that he personally found the following items in the garage attached to the house on Merinda Lane: (1) small zip-lock baggies, (2) empty cold medicine boxes, and (3) receipts showing purchases for dry ice, camp fuel, lithium batteries, vinyl tubing, and Red Devil lye. Agent Davis testified that he participated in the search and that he personally found the following items in the house: (1) two separate quantities of methamphetamine, (2) a set of scales located near the methamphetamine, (3) small zip-lock baggies, (4) acetone, (5) denatured alcohol, (6) mineral spirits, and (7) ammonium nitrate.
 

 ¶ 22. Jimmy Green, Jr. of the Stone County Sheriffs Department and a narcotics investigator with the Stone County Sheriffs Department and the “Coastal Narcotics Enforcement Team” testified that he participated in the search.
 
 [3]
 
 Investigator Green testified that he found the following noteworthy items in the master bathroom: (1) six boxes of allergy medicine containing pseudoephedrine; (2) two sixteen-ounce bottles of acetone; (3) numerous bags of loose pseudoephedrine pills; and (4) lithium batteries. Investigator Green also testified that he found four boxes of medicine that contained pseu-doephedrine in the master bedroom. Finally, Investigator Green testified that he found a pack of lithium batteries inside a tool box that was stored in the garage.
 

 ¶ 23. Sergeant Erik Deitrick of the Long Beach Police Department testified that he participated in the search and that he found two boxes of medicine that contained pseudoephedrine in Bond’s Isuzu Rodeo that was located at the house on Merinda Lane. Finally, Investigator Jason Case, a narcotics investigator with the Long Beach Police Department, testified that he also assisted with the search. Investigator Case testified that he searched the kitchen and that he found empty cold medicine blister packs and an apparatus that was described as an “acid gas generator” that is critical to manufacturing methamphetamine. Additionally, the prosecution presented photographic evidence depicting a modified cylindrical cooler with coiled plastic tubing running through it. According to Agent Davis, such an apparatus is also a critical component of manufacturing methamphetamine.
 

 ¶ 24. As previously mentioned, in
 
 Jenkins
 
 this Court held that it was “necessary to consider that various items usable in drug manufacture were also found” when determining whether there was sufficient evidence to support a conviction for possession of methamphetamine with intent to distribute.
 
 Jenkins, 757
 
 So.2d at 1010 (¶ 24). Summarizing the evidence in the case presently before us, law enforcement officers found 684 tablets that contained
 
 *593
 
 pseudoephedrine, numerous precursors necessary to manufacture methamphetamine, critical components modified to manufacture methamphetamine, scales that are typically used to weigh methamphetamine prior to selling it, and small zip-lock baggies typically used to package methamphetamine prior to selling it.
 

 ¶ 25. Additionally, Agent Davis testified as an expert witness. According to Agent Davis, the quantity of methamphetamine discovered at the house on Merinda Lane was more than what most users would have for personal use. Based on the totality of the evidence, we find that there was sufficient evidence to support the jury’s decision to find Bond guilty of possession of methamphetamine with the intent to distribute. It follows that we find no merit to this argument.
 

 II. WEIGHT OF THE EVIDENCE
 

 ¶ 26. In this issue, Bond claims the circuit court erred when it denied his motion for a new trial. We are mindful that as we review the circuit court’s decision to deny a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush,
 
 895 So.2d at 844 (¶ 18). The supreme court has further instructed that, when reviewing a trial court’s decision to deny a motion for a new trial:
 

 [T]he court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 Id.
 
 (footnote and internal citations and quotations omitted).
 

 ¶ 27. As in his first issue, Bond focuses exclusively on his conviction for possession of methamphetamine with the intent to distribute. Here, Bond claims his conviction is contrary to the overwhelming weight of the evidence. Bond notes that there was no evidence that anyone ever observed any sales or transactions at the house on Merinda Lane. Bond also notes that there was no evidence of increased traffic at the house. Further, Bond states that the officers did not seize a large amount of money from the house. However, considering those matters discussed in Issue I, we cannot find that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. We find no merit to this argument.
 

 ¶ 28. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, POSSESSION OF METHAMPHETAMINE WITH THE INTENT TO DISTRIBUTE, AND COUNT II, POSSESSION OF PRECURSORS WITH THE INTENT TO MANUFACTURE METHAMPHETAMINE, AND SENTENCE AS A HABITUAL OFFENDER OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR EACH COUNT
 
 *594
 
 WITH THE SENTENCES TO RUN CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
 

 [1]
 

 . The prosecution later successfully moved to amend the indictment to charge Bond as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81.
 

 [2]
 

 . The circuit court’s sentences do not meet the requirements of Mississippi Code Annotated section 99-19-81. Section 99-19-81 requires that a sentencing court sentence a defendant who qualifies for enhanced sentencing as a habitual offender to the maximum sentence for that offense. The maximum authorized sentence for possession of methamphetamine with intent to distribute is thirty years. Miss.Code Ann. § 41-29-139(b)(1) (Rev.2005). Likewise, the maximum authorized sentence for possession of precursors with the intent to manufacture methamphetamine is also thirty years. Miss. Code Ann. § 41-29-313(c) (Rev.2005). The record indicates that the circuit court may have been concerned that there was significant disparity between Young’s sentence to drug court and the maximum sentences for the two charges for which Bond had been convicted. However, the circuit court made no other proportionality analysis pursuant to
 
 Solem
 
 v.
 
 Helm,
 
 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) and certainly made no finding that following the mandate of section 99-19-81 violated the constitutional prohibition against cruel and unusual punishment. Young had pled guilty to possession of narcotics, and Bond had been convicted of possession of methamphetamine with the intent to distribute and possession of precursors with the intent to manufacture methamphetamine. Additionally, Young was not a habitual offender, but Bond qualified for sentencing as a habitual offender. In any event, the State has not filed a cross-appeal attacking the legality of Bond's sentence. The State, if it had so chosen, was fully authorized to cross-appeal pursuant to Mississippi Code Annotated section 99-35-103(c) (Rev.2006). Accordingly, this Court has no authority to modify Bond's sentences so that they reflect the appropriate maximum sentences as
 
 required
 
 by the Mississippi Legislature, which has removed all discretion regarding the duration of a sentence that a habitual offender may receive.
 

 [3]
 

 . Investigator Green later testified that the Coastal Narcotics Enforcement Team was "a Multi-Jurisdictional Task Force that was formed to cover the coastal counties to enforce the laws of illegal narcotics, distribution, sale and use of illegal narcotics.”